In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2479

520 SOUTH MICHIGAN AVENUE ASSOCIATES, LTD.,
doing business as The Congress Plaza Hotel
& Convention Center,

*Plaintiff-Appellant*,

*v.*

RICHARD A. DEVINE, State's Attorney of Cook County,
Illinois; LISA MADIGAN, Attorney General of Illinois;
and ART LUDWIG, Director of the Illinois
Department of Labor,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 6400—**Robert W. Gettleman**, *Judge*.

ARGUED DECEMBER 1, 2005—DECIDED JANUARY 10, 2006

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. For many years it has been
a crime in Illinois to employ a "professional strikebreaker."
820 ILCS 30/2. (A "professional strikebreaker" is anyone
who repeatedly works during strikes. 820 ILCS 30/1(c). One
need not be a goon to fit the definition.) In 2003 the state
extended the prohibition to acquisition of strike-breaking
labor from any "day or professional labor service agency".
2003 Ill. Laws 375. When that amendment to the Employ-

ment of Strikebreakers Act took effect on January 1, 2004, workers of the Congress Hotel in Chicago were on strike, and the Hotel was operating with replacement workers. Soon the Illinois Department of Labor asked the Hotel for information about the origins of its labor force. The civil investigative demand invoked the Day and Temporary Labor Services Act, 820 ILCS 175/1 et seq., which has its own administrative apparatus. But as that Act also supplies the definition of "day and temporary labor service agency" for purposes of the Strikebreakers Act, see 820 ILCS 30/1(e), the Hotel concluded that it was in the state's cross-hairs and filed this suit under 42 U.S.C. §1983, seeking a declaratory judgment that the Strikebreakers Act is preempted. See *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989); *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976). The district court dismissed the complaint for want of jurisdiction, holding that the Hotel's inability to demonstrate that criminal prosecution is "imminent" means that there is no case or controversy under Article III of the Constitution. *520 South Michigan Avenue Associates, Ltd. v. Devine*, 366 F. Supp. 2d 683 (N.D. Ill. 2005).

The district court did not explain the provenance of this "imminence" requirement. Courts occasionally say that one or another plaintiff has standing because a threat of prosecution is imminent, but that is a far cry from holding that *only* an imminent criminal prosecution suffices. When the Supreme Court uses the word "imminent" in describing the requisites of standing, it says that the injury must be "actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), quoting from *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Standing depends on the probability of harm, not its temporal proximity. When injury has occurred or is likely in the future, the fact that state litigation may be deferred does not prevent federal litigation now. The

Hotel's use of replacement workers that may have been referred by employment agencies is enough to show that a genuine controversy exists, because it is caught between the need to comply with the state law and the desire to reduce the cost of its operations. See *Babbitt v. United Farm Workers*, 442 U.S. 289 (1979).

Courts frequently engage in pre-enforcement review based on the potential cost that compliance (or bearing a penalty) creates. Think of *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), in which a private school obtained review of a state law that required all youngsters to attend public schools, even though the law would not take effect for two years. Prosecution was hardly "imminent," yet the Court held that the school had standing to contest the statute's validity. Likewise the Court held in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), that drug manufacturers could obtain judicial review of a regulation whose effective date lay in the future. Costs that the manufacturers would incur in preparing to comply (or the legal risks they would incur in not doing so) supplied standing, the Court held, and the case was ripe because the regulation's validity could be assessed without knowing the precise means and expense of compliance. See also, e.g., *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978); *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985), aff'd mem., 475 U.S. 1001 (1986); Daniel A. Farber, *Uncertainty as a Basis for Standing*, 33 Hofstra L. Rev. 1123 (2005). No one was at imminent risk of prosecution in *Buckley v. Valeo*, 424 U.S. 1 (1976), or most of the later suits contesting campaign-finance regulation. The catalog of decisions that conduct review before a rule has gone into force, and hence long before prosecution is "imminent," is extensive.

If a criminal prosecution of the Hotel really *were* imminent, then a federal court might well abstain on comity

grounds—for the prosecution would offer the Hotel an opportunity to present its legal arguments, and states are entitled to insist that their criminal courts resolve the entire dispute. See, e.g., *Younger v. Harris*, 401 U.S. 37 (1971). It is precisely because the State's Attorney does not promise to offer the Hotel a prompt opportunity to resolve the dispute in state court that it is entitled to turn to a federal tribunal. Otherwise the risk of prosecution, and the costs of complying with or transacting around the Strikebreakers Act, will continue. As the Supreme Court observed in *Babbitt*, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably [protected by federal law], but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await a criminal prosecution as the sole means of seeking relief." 442 U.S. at 298.

Defendants offer an alternative ground of affirmance: that the 2004 version of the Strikebreakers Act already has been held to be preempted. See *Caterpillar Inc. v. Lyons*, 318 F. Supp. 2d 703 (C.D. Ill. 2004). If defendants—the State's Attorney of Cook County, the Attorney General of Illinois, and the Director of the Illinois Department of Labor, which administers the Day and Temporary Labor Services Act—had acquiesced in *Caterpillar* and represented that they would not prosecute the Hotel under the Strikebreakers Act, then there would indeed be no live controversy, because there would not be a "credible threat of prosecution". See *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004). Cf. *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995 (7th Cir. 2000). State officials made exactly that promise in *Wisconsin Right to Life*, and we held that it demonstrated the absence of any real dispute. But our defendants did not make such a commitment in their briefs, declined an opportunity to do so at oral argument, and adhered to that position in a post-argument letter.

Decisions of district courts bind the litigants but have no authoritative effect elsewhere in the circuit (or even in the same district). See, e.g., *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987). The judgment in *Caterpillar* was not appealed, so it will not lead to a decision with circuit-wide effect. None of the three defendants in this litigation was a party to *Caterpillar*, and none contends that as a matter of Illinois law a judgment adverse to one State's Attorney would bind any other. States Attorneys operate within single counties; they are state officials but are not "the" state, and each may operate independently, which implies that none is bound by a judgment against another. See *People v. Gray*, 214 Ill. 2d 1, 10, 823 N.E.2d 555, 560 (2005) (a defendant's agreement with one state's attorney does not bind any other). Cf. *Staten v. Neal*, 880 F.2d 962 (7th Cir. 1989). The Attorney General does speak for the State of Illinois but cannot direct the prosecution activities of the 102 States' Attorneys. See *People v. Buffalo Confectionary Co.*, 78 Ill. 2d 531, 535-38, 401 N.E.2d 546, 549-51 (1980).

Federal officials are not bound by district judges' (or even circuits') legal decisions; they must comply with the judgment but need not apply the ruling more widely. As the Court explained in *United States v. Mendoza*, 464 U.S. 154 (1984), any other approach would prevent multiple circuits from considering a question and thus impede the development of federal law. Illinois appears to take the same view for domestic purposes. Although *People v. Williams*, 2005 Ill. App. LEXIS 1099 (2d Dist. Nov. 3, 2005), could be understood as holding that a judgment against one State's Attorney binds others, it is hard to reconcile with decisions such as *Gray*.

Perhaps more to the point, *Caterpillar* is a federal judgment under federal substantive law, so its preclusive effect is determined by federal rules. See *Semtek Interna-*

*tional, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938). The federal rule is that judgments do not block public officials from seeking reconsideration of legal questions in future suits. So *Caterpillar* lacks preclusive effect, and it has not persuaded our defendants to surrender. If *Caterpillar* had been a decision of the Supreme Court, then its authoritative force would obviate the need to worry about the scope of preclusion. The Hotel would not require additional protection. See *Lawson v. Hill*, 368 F.3d 955 (7th Cir. 2004) (an injunction against prosecution under a state flag-desecration statute that is obviously unconstitutional, given *United States v. Eichman*, 496 U.S. 310 (1990), and *Texas v. Johnson*, 491 U.S. 397 (1989), would be both unnecessary and offensive to the state's dignity). A decision of a single district judge does not give the Hotel that kind of shelter, and the defendants have declined to provide it voluntarily. The Hotel therefore is entitled to decision on the merits.

Resolution should not be difficult. *Machinists* holds that states are forbidden to regulate on any subject that federal labor law reserves for the play of economic forces. See also *Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts*, 507 U.S. 218, 227-28 (1993); *Wisconsin Department of Industry v. Gould Inc.*, 475 U.S. 282 (1986). Under federal labor law, just as workers are free to withhold their labor, so employers are free to hire either temporary (see *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 345 (1938)) or permanent (*NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375 (1967)) replacements—though employers can't give them super-seniority, compare *NLRB v. Erie Resistor Corp.*, 373 U.S. 221 (1963), with *Trans World Airlines, Inc. v. Flight Attendants*, 489 U.S. 426 (1989). The state's effort to make the hiring of replacement workers a crime is so starkly incompatible with federal labor law, which prevails under the Constitution's Supremacy Clause, that we do not

understand how a responsible state legislature could pass, a responsible Governor sign, or any responsible state official contemplate enforcing, such legislation. States are entitled to protect replacement workers against fraud, see *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983), but the Strikebreakers Act does not do this; it is written as a substantive limit on the employer's use of a particular economic tactic. Unless there is some way to support this law that state officials have yet to suggest—either in *Caterpillar* or in this litigation—a declaratory judgment should be issued with dispatch.

The judgment is reversed, and the case is remanded for decision on the merits.

A true Copy:

      Teste:

                    _____

                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*